

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 12, 1992

Mr. Jack E. Crump
Executive Director
Commission on Jail Standards
P. O. Box 12985
Austin, Texas 78711

Opinion No. DM-119

Re: Authority of the Commission on Jail Standards to promulgate rules regarding the temporary emergency housing of county inmates, and related questions (RQ-351)

Dear Mr. Crump:

You have requested our opinion as to whether the Commission on Jail Standards (hereafter "the commission") is authorized to adopt rules regarding temporary emergency housing of county inmates. Specifically, you ask:

1. May the commission create standards authorizing facilities for temporary purposes?

2. Does the commission have other alternatives to resolve non-compliant conditions (*i.e.*, crowded) except closure?

3. May the commission authorize the creation of facilities and usage for longer than one year?

4. It is envisioned that temporary facilities would have only one classification of inmate. Does the requirement of Section 351.005 Local Government Code, which deals with separation of inmates, limit construction to masonry, metal or comparable material, provided the facility is structurally sound?

Your questions may be largely resolved by reference to Attorney General Opinion DM-24 (1991). In that opinion, we observed that the commission is empowered by section 511 of the Government Code "to promulgate rules establishing minimum standards for the 'construction, equipment, maintenance, and

operation of county jails,' and to enforce its rules and state laws relating to standards for county jails." Attorney General Opinion DM-24 at 3. The opinion also noted that the definition of "county jail" under chapter 511 "encompasses facilities that are not within the description of 'safe and suitable jails' found in chapter 351 of the Local Government Code." *Id.* Chapter 351 refers to the "traditional county jail, and does not contemplate alternative incarceration facilities such as a low-risk facility." *Id.* at 4. So long as a county maintains one traditional "county jail" that *is* subject to chapter 351, its other "jail" facilities are not necessarily subject to those requirements. Rather, they are subject to the regulations promulgated by the commission under chapter 511. "The reasonableness of standards [imposed by such regulations] developed for particular ancillary jail facilities must be determined on a case-by-case basis." *Id.* at 5.

Section 511.009(a) of the Government Code, directs the commission to, *inter alia*:

> (1) adopt reasonable rules and procedures establishing minimum standards for the construction, equipment, maintenance, and operation of county jails;
>
> (2) adopt reasonable rules and procedures establishing minimum standards for the custody, care, and treatment of prisoners;
>
> . . . .
>
> (5) revise, amend, or change rules and procedures if necessary;
>
> . . . .
>
> (10) at least annually determine whether each county jail is in compliance with the rules and procedures adopted under this chapter.

Section 511.011 of the Government Code, provides that if the commission finds that a facility "does not comply with state law or the rules, standards, or procedures of the commission, it shall report the noncompliance to the county commissioners and sheriff of the county responsible for the county jail and shall send a copy of the report to the governor." After a finding of noncompliance, the commission is directed to "grant the county or sheriff a reasonable period of not more than one

year after the date of the report under Section 511.011 to comply with commission rules and procedures and state law." Gov't Code § 511.012(a). If the commissioners or the sheriff so request, the commission is empowered to "grant reasonable variances, clearly justified by the facts, for operation of a county jail not in strict compliance with state law." *Id.* A variance may not, however, allow "unhealthy, unsanitary, or unsafe conditions." *Id.*

Section 511.012(b) permits the commission, by order, to "prohibit confinement of prisoners in the county jail," or to require the transfer of inmates "necessary to bring the county jail into compliance." Section 511.014(a) authorizes the commission, "[i]nstead of closing a county jail, [to] bring an action . . . to enforce or enjoin a violation of Subchapter A, Chapter 351, Local Government Code, or a commission rule, order, or procedure." We construe the enforcement portions of chapter 511, subsections 511.011 through 511.014, to apply both to the traditional "county jail" governed by chapter 351 of the Local Government Code, and to those adjunct and alternative facilities which are subject only to commission regulation.

We turn now to your specific questions, addressing your second question first. That question asks whether the commission, after finding a facility to be in non-compliance with state law rules, standards, or procedures of the commission, has any alternative to closing the facility if the non-compliance has not been remedied within the one year period set by Government Code section 511.012(a). The commission is authorized, but is not required, to "prohibit confinement of prisoners" in a non-compliant facility. *Id.* § 511.012(b); *see also id.* §§ 511.012(a), 511.014(a) (discussed above). Again, the county jail must comply with Local Government Code chapter 351, whereas other facilities need comply only with commission rules.

Your remaining questions concern temporary emergency housing of county inmates. The commission is empowered to "create standards authorizing facilities for temporary purposes." As we have indicated, only a traditional "county jail" must comply with chapter 351. Other facilities housing county inmates need only comply with rules promulgated by the commission under subsection 511.009. Those rules may authorize emergency facilities, so long as the standards for such facilities are "reasonable."

There is nothing in chapter 511 which would prohibit the commission from authorizing the creation and usage of facilities for longer than one year. Subsection 511.012 refers to a maximum period of one year for compliance with commission rules after notification of noncompliance, and subsection 511.009(10) requires that the commission determine "at least annually" whether a facility is "in compliance

with [its] rules and procedures." As long as they are reasonable, however, the rules for minimum compliance under subsection 511.009 may permit the use of a facility for more than one year. Furthermore, a variance under subsection 511.012(a) may be granted for an indefinite period.

Your last question is whether the requirement of subsection 351.005 limits construction to "masonry, metal or comparable material." As we have previously noted, chapter 351 applies only to a traditional county jail. Any ancillary or alternative facility is subject only to the rules of the commission promulgated under chapter 511. So long as the commission's rules are reasonable, they need not restrict construction to "masonry, metal or comparable material."[1]

Finally, we note that whether standards promulgated by the commission are reasonable as applied to a particular facility must be determined on a case-by-case basis. Whether such rules would be reasonable involves factual determinations that cannot be resolved in the opinion process.

## S U M M A R Y

Only a traditional county jail is subject to the requirements of chapter 351 of the Local Government Code. "Alternative incarceration facilities" are subject only to the regulations of the Commission on Jail Standards. As to such facilities, the commission may promulgate minimum standards which authorize (1) facilities for temporary purposes; (2) remedies for non-compliance other than closure of a facility; (3) facilities intended to be used for longer than one year; and (4) facilities which are not constructed of masonry, metal or comparable material.

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[1]The commission's rules on prison facilities must be consistent with the Eighth Amendment of the United States Constitution.

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General